# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

MICHAEL ANTONIO MALONE,

                    Petitioner,               :     Case No. 1:17-cv-548

        - vs -                                      District Judge Michael R. Barrett
                                                    Magistrate Judge Michael R. Merz

TIM BUCHANAN, Warden,
  Noble Correctional Institution
                                              :
                    Respondent.

# REPORT AND RECOMMENDATIONS

        This habeas corpus case, brought *pro se* by petitioner Michael Malone under 28 U.S.C. §

2254, is before the Court for decision on the merits. The Petition was filed August 18, 2017 (ECF

No. 1). On Magistrate Judge Wehrman's Order (ECF No. 5), the Respondent filed the State Court

Record (ECF No. 9) and a Return of Writ (ECF No. 10). Petitioner then filed a Reply (ECF No.

13). The reference of the case has recently been transferred to the undersigned to help balance the

Magistrate Judge workload in the Western Division.[1]

---

[1] The reference was initially made to Magistrate Judge J. Gregory Wehrman of the Eastern District of Kentucky who
has been sitting by assignment in this Court. The reference was briefly transferred to Magistrate Judge Litkovitz
because of Magistrate Judge Wehrman's pending retirement. Ultimate assignment of the case remains with District
Judge Michael Barrett.

**Litigation History**

A Scioto County grand jury indicted Petitioner on March 6, 2014, on one count of theft from an elderly person or disabled adult in violation of Ohio Revised Code § 2913.02(A)(1), (B)(1), and(3)(Count 1); one count of forgery in violation of Ohio Revised Code § 2913.31(A)(1) and (C)(1)(c)(iii)(Count 2); one count of forgery (uttering) in violation of Ohio Revised Code § 2913.31(A)(3) and (C)(1)(c)(iii)(Count 3); and one count of receiving stolen property in violation of Ohio Revised Code § 2913.51(A) and (C)(Count 4).  (Indictment, State Court Record, ECF No. 9, PageID 73 *et seq.*)  Malone was convicted on all counts and sentenced to a term of eleven years imprisonment.

The Fourth District Court of Appeals affirmed except for concluding that uttering a forged check and receiving stolen property were allied offenses of similar import under Ohio Revised Code § 2941.25; the case was remanded for resentencing as to those two counts.  *State v. Malone,* 2016-Ohio-3543 (4th Dist. Jun. 16, 2016), appellate jurisdiction declined, 148 Ohio St. 3d 1411 (2017).

Meanwhile, and proceeding *pro se*, Malone filed an Application for Reopening his direct appeal under Ohio R. App. P. 26(B), asserting he received ineffective assistance of appellate counsel when his appellate attorney omitted six assignments of error.  (State Court Record, ECF No. 9, PageID 224 et seq.)  The Fourth District denied relief on the merits.  *State v. Malone,* Case No. 14CA3648 (4th Dist. Nov. 29, 2016)(unreported; copy at ECF No. 8, PageID 287 *et seq.*), appellate jurisdiction declined, 148 Ohio St. 3d 1428 (2017).

After the trial court resentenced him, Malone filed the instant Petition for Habeas Corpus, pleading the following grounds for relief:

**Ground One:** The Allied Offense and Merger violation is apparent on the face of the indictment when Petitioner is charged as if it is a single count. Petitioner was convicted on one count of forgery and one count of uttering. The Court of Appeals of Ohio, Fourth Appellate District, Scioto County, unreasonably applied clear United States Supreme Court precedent and applied unreasonably and undermined facts thereby violating Petitioner's Fifth and Fourteenth Constitutional rights as well as Article I, §10 of the Ohio Constitution, which left Petitioner with an 11-year sentence and is contrary to Federal and State due process clauses to the Constitution.

**Ground Two**: The Court of Appeals of Ohio, Fourth Appellate District, Scioto County, made an objectively unreasonable determination of the facts when there was no inquiry as to Malone's present or future ability to pay the amount of the Financial sanction violating the Federal Victim and Witness Protection Act of 1982 (VWPA) and the federal Sentencing Reform Act of 1984.

**Ground Three**: Petitioner was prejudicially deprived of his rights to Effective Assistance of Appellate Counsel on direct appeal as secured by the Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution where ineffective assistance offered by Appellate Counsel plagued petitioner's appeals with prejudice. The Court of Appeals of Ohio, Fourth Appellate District, Scioto County, unreasonably applied the *Strickland* standard to assess ineffective assistance of counsel when it erroneously concluded that it is their belief that Petitioner's proposed assignments of error would not have had a reasonable probability of success had appellate counsel raised them on appeal. Appellate counsel was ineffective under *Strickland* by not addressing appellant's concerns.


**Ground Four**: By accepting the jury verdict, the court erred and violated the Due Process clauses to the United States and the Ohio Constitutions, whereas the prosecution for the State, failed to offer sufficient evidence, as to all necessary elements of a crime beyond a reasonable doubt and appellate counsel was ineffective under *Strickland* by not having the State to prove each and every element contained in the indictment beyond a reasonable doubt.

**Ground Five:** The jury verdict deprived petitioner [of] Due Process of law as the verdict of one count of theft from the elderly, one count of forgery, one count of uttering, and one count of receiving stolen property are against the manifest weight of the evidence and

appellate counsel was ineffective under *Strickland* by not having the State to prove each and every element contained in the indictment beyond a reasonable doubt.

**Ground Six:** Petitioner will show that he was denied his federal Sixth Amendment rights to have a fair and impartial jury when erroneous jury instructions made its way into the hands of the jury and the appellate court unreasonably applied clear federal constitution [sic] when during the course of the trial, portions of the jury instructions were admitted into evidence pursuant to an agreement of counsel that unadmitted portions would be removed from the instructions before they were submitted to the jury. The deletions were not made before the jury began its deliberations. The unfair prejudicial error was committed when erroneous jury instructions made its way into jury room as part of the government exhibit and appellate counsel was ineffective under *Strickland* for not addressing the Constitutional Violation on direct appeal.

**Ground Seven:** Petitioner will also show that the State appellate court disregarded the United States Supreme Court's decision by violating his Sixth Amendment rights to a fair and impartial jury verdict where as missing verdict forms effected [sic] the outcome of the trial and appellate counsel was ineffective under *Strickland* for not addressing it on direct appeal.

**Ground Eight:** This case reeks with multiple constitutional violations. The above cited errors, when taken together, deprived Petitioner, Michael Malone Sr., of a fair trial as guaranteed under the Fourth, Fifth and Fourteenth Amendment's to the United States as well as the Ohio Constitutions "Due Process" clauses and appellate counsel was ineffective under *Strickland* for not addressing it on direct appeal.

(Petition, ECF No. 1, PageID 5-15.)

# Analysis

**Ground One: Allied Offenses Error**

In his First Ground for Relief, Malone contends the Fourth District Court of Appeals erred in its merger of allied offenses analysis.

The State argues that there was no error because the convictions for forgery and for uttering are based on different checks (Return, ECF No. 10, PageID 706-11). Second, it asserts a violation of Ohio Revised Code § 2941.25 is not cognizable in habeas corpus because it involves only a state law question. *Id.* Finally, to the extent Malone attempts to argue a federal constitutional claim, specifically Double Jeopardy in Ground One, the Respondent asserts Malone never made such a claim in the state courts and is thus barred by lack of fair presentation. *Id.*

Malone responds that he did not procedurally default on the Double Jeopardy claim in Ground One because it was fairly presented to the Fourth District Court of Appeals (Traverse, ECF No. 13, PageID 760). In fact, he claims the Fourth District understood he was presenting a federal constitutional claim with the allied offenses argument. *Id.* at 754.

Malone presented his allied offenses claim on appeal as his First Assignment of Error which the Fourth District decided as follows:

> **[*P8]** In his first assignment of error, appellant asserts that the trial court erred in determining which counts should have merged as allied offenses of similar import.
>
> **[*P9]** The determination of whether crimes constitute allied offenses of similar import is a question of law. Thus, appellate courts will review a trial court's determination de novo. *State v. Cole*, 4th Dist. Athens No. 12CA49, 2014-Ohio- 2967, at ¶7; *State v. Greer*, 4th Dist. Jackson No. 13CA2, 2014-Ohio-2174, at ¶8. In other words, an appellate court will afford no deference to a trial court's decision and, instead, conduct an independent review. *Holiday Haven Members Assn. v. Paulson*, 4th Dist. Hocking No. 13CA13, 2014-Ohio-3902, at ¶13; *Bodager v. Campbell*, 4th Dist. Pike No. 12CA828, 2013-Ohio-4650, at ¶19.
>
> **[*P10]** Appellant argues that the trial court erred in regard to two separate mergers [sic] issues. We address each separately.

### A. The two forgery counts

[*P11] Appellant argues that the trial court erred by not merging the two forgery counts as allied offenses of similar import. Count two of the indictment charged appellant with forging McKibbin's name to checks in violation of R.C. 2913.31(A)(1). Count three charged appellant with "uttering" (cashing) forged checks in violation of subsection (A)(3) of that statute.

[*P12] Appellant's position is that he could not cash the check without forging it. By contrast, the State argued that forging the check in and of itself, is a complete crime and cashing that check is something altogether different. We point out that neither party has cited any authority to support their respective positions.

[*P13] R.C. 2941.25 provides as follows:

> "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."

[*P14] The Ohio Supreme Court has determined that this statute protects a defendant from receiving multiple punishments for "a single criminal act." See *State v. Washington*, 137 Ohio St.3d 427, 2013-Ohio-4982, 999 N.E.2d 661, at ¶18; *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, at ¶13. In the case *sub judice*, however, we do not have "a single criminal act." This is not a case in which appellant forged and uttered a single $37,000 check. Instead, a string of more than fifty separate criminal acts, carried out over approximately one year, resulted in the theft of $83,000. In the case *sub judice,* we believe that the evidence can be viewed in such a way to show that appellant committed forgery and uttering with completely different checks. State's Exhibits four and ten, as well as the testimony of several witnesses, establishes the existence of sufficient evidence to convict

> appellant on each of the two counts. Insofar as count II (forgery) is concerned, the State introduced into evidence the following checks that the victim claimed he did not sign:
>
> [Table of forged checks omitted.]
>
> **[*P13]** In short, we believe that evidence of different instances of criminal misconduct exists on different dates, and with different check numbers, to support the convictions under the two subsections of 2923.13(A). Thus, under the circumstances present in this case, we need not determine whether forging and uttering a forged check are allied offense of similar import for purposes of R.C. 2941.25. Rather, the fact remains that multiple separate instances of forgery and "uttering" exist to support each conviction.
>
> **B. The Forgery and Receiving Stolen Property Counts**
>
> [Omitted because the decision was favorable to Malone and not relevant to this Court's decision.]

*State v. Malone*, 2016-Ohio-3543 (footnote omitted).

In his Traverse Malone cites the ways in which a federal constitutional claim can be fairly presented to state courts: "A petitioner fairly presents his claim to the state courts by citing a provision of the United States Constitution, federal decisions using constitutional analysis, or state decisions employing constitutional analysis in similar fact patterns." (Traverse, ECF No. 13, PageID 754.) But Malone fails to apply this standard to his own case. There are no federal constitutional authorities cited in his Amended Brief (State Court Record, ECF No. 9, PageID 141). No reference is made to any provision of the Federal Constitution or to any federal case law interpreting it. Only the asserted violation of Ohio Revised Code § 2941.25 is argued. Nor did the Fourth District somehow "understand" it was deciding a Double Jeopardy claim. Its decision makes no reference to the United States Constitution or to federal or state case law analyzing a Double Jeopardy claim.

Respondent is correct that this Court cannot review the Fourth District's decision on the application of Ohio Revised Code § 2941.25 to Malone's case. That is purely a matter of state law and federal habeas corpus is available only to consider federal constitutional questions. 28 U.S.C. § 2254(a); *Wilson v. Corcoran,* 562 U.S. 1, 5 (2010)(quoting *Estelle v. McGuire*, 502 U.S. 62, 67 (1991), in turn quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); see also *Smith v. Phillips*, 455 U.S. 209 (1982); *Barclay v. Florida,* 463 U.S. 939 (1983).

Malone suggests that he has not procedurally defaulted the Double Jeopardy claim because he raised it on appeal to the Supreme Court of Ohio. However, that court will not consider a claim of error not raised in the lower court of appeals.

Malone relies on Judge Weber's decision in *Palmer v. Haviland,* No. C-1-04-028, 2006 U.S. Dist. LEXIS 95890 (S.D. Ohio 2006), for the proposition that pleading a violation of Ohio Revised Code § 2941.25 adequately alerts the Ohio courts to the presence of a double jeopardy claim. But in *Palmer* the petitioner argued his Ohio Revised Code § 2941.25 claim in terms of *State v. Rance,* 85 Ohio St. 3d 632 (1999), an Ohio Supreme Court decision which Judge Weber found relied on federal double jeopardy analysis. *Palmer* at *15-16. That is not the case here. Malone points to no Ohio case cited in his Amended Appellant's Brief which contained a federal double jeopardy analysis. Judge Weber also noted that the appellate decision in *Palmer* recognized the federal constitutional question raised by *Rance*. *Id.* at *18. That also is not the case here – the Fourth District's decision does not advert to double jeopardy at all.

Accordingly Ground One should be dismissed with prejudice as non-cognizable (as to claimed Ohio Revised Code § 2941.25 violations) or procedurally defaulted (as to double jeopardy claims) for failure to fairly present a double jeopardy claim to the Ohio courts.

**Ground Two:  Failure to Inquire into Ability to Pay Restitution**

In his Second Ground for Relief, Malone claims his rights under Ohio Revised Code § 2929.18 and 2929.19 as well as the federal Victim and Witness Protection Act of 1992 and the Federal Sentencing Reform Act of 1984 were violated because the trial court failed to make an adequate inquiry into his ability to pay restitution to the victim.

Respondent argues this claim is not cognizable in habeas because Malone is not in custody as a result of the monetary sanction imposed on him.  (Return, ECF No. 10, PageID 712, citing *Smith v. White*, 2012 WL 3961233 (W.D. Ky. Sept. 10, 2012), and *United States v. Collier*, 2011 WL 1882401 (E.D. Ky. Jan. 11, 2011).

Malone argues in his Traverse that he has not procedurally defaulted this claim, but the State did not raise that defense.  Malone essentially makes no response to the State's claim that Ground Two is not cognizable because he is not in custody as a result of the costs and restitution order.  He notes that he was found to be indigent at the outset of his case for purposes of appointment of counsel and essentially argues that there was no evidence to overcome that finding (Traverse, ECF No. 13, PageID 777).  But that point is irrelevant to the State's claim of noncognizability.  He argues as a federal standard for review the provisions of the United States Sentencing Manual, but the Manual and the Reform Act of 1984 from which it derives have no application in state courts.  The same is true of the Victim and Witness Protection Act.

The undersigned is persuaded by Magistrate Judge Whalin's conclusion in *Smith* that habeas corpus is not available to review monetary sanctions because they do not place a petitioner in custody.  A different question would be presented if a habeas petitioner were imprisoned for failure to pay a monetary sanctions, but that is not the case here.

Ground Two should be dismissed for failure to state a claim on which habeas corpus relief can be granted.

**Ground Three:  Ineffective Assistance of Appellate Counsel**

In his Third Ground for Relief, Malone claims he received ineffective assistance of appellate counsel in five ways:  counsel failed (1) to raise a claim that the jury received erroneous instructions; (2) to raise an insufficiency of the evidence claim; (3) to keep Malone informed about "important decisions and on arguments he was preparing"; (4) "to protect petitioner's Constitutional rights raised herein"; and (5) to argue the prejudice which resulted from jurors being given evidence of Malone's prior convictions.

The governing standard for ineffective assistance of trial counsel was adopted by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.  In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice.  *Berghuis v. Thompkins,* 560 U.S. 370, 389 (2010), *citing Knowles v. Mirzayance,* 556 U.S.111 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel=s challenged conduct, and to evaluate the conduct from counsel=s perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694. See also *Darden v. Wainwright*, 477 U.S. 168 (1986); *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998); *Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987).

A criminal defendant is entitled to effective assistance of counsel on appeal as well as at trial, and that means counsel who acts as an advocate rather than merely as a friend of the court. *Evitts v. Lucey*, 469 U.S. 387, 394 (1985); *Penson v. Ohio*, 488 U.S. 75 (1988); *Mahdi v. Bagley*, 522 F.3d 631, 636 (6th Cir. 2008). The *Strickland* test applies to appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Burger v. Kemp,* 483 U.S. 776 (1987). "To evaluate a claim of ineffective assistance of appellate counsel, then, the court must assess the strength of the claim that counsel failed to raise." *Henness v. Bagley*, 644 F.3d 308, (6th Cir. 2011), citing *Wilson v. Parker*, 515 F.3d 682, 707 (6th Cir. 2008). "Counsel's failure to raise an issue on appeal amounts to ineffective assistance only if a reasonable probability exists that inclusion of the issue would have changed the result of the appeal." *Henness*, *supra*, *citing Wilson.* The attorney need not

advance every argument, regardless of merit, urged by the appellant. *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." 463 U.S. 751-52). Effective appellate advocacy is rarely characterized by presenting every non-frivolous argument which can be made. *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003). *Williams v. Bagley,* 380 F.3d 932, 971 (6th Cir. 2004); see *Smith v. Murray*, 477 U.S. 527 (1986). "Only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of [appellate] counsel be overcome." *Dufresne v. Palmer*, 876 F.3d 248, 257 (6th Cir. 2017), quoting *Fautenberry v. Mitchell*, 515 F.3d 614, 642 (6th Cir. 2008)(internal quotation marks omitted). However, failure to raise an issue can amount to ineffective assistance. *McFarland v. Yukins*, 356 F.3d 688 (6th Cir. 2004), citing *Joshua v. Dewitt,* 341 F.3d 430, 441 (6th Cir. 2003); *Lucas v. O'Dea*, 179 F.3d 412, 419 (6th Cir. 1999); and *Mapes v. Coyle,* 171 F.3d 408, 427-29 (6th Cir. 1999). Counsel can be ineffective by failing to raise a "dead-bang winner," defined as an issue which is obvious from the trial record and which would have resulted in a reversal on appeal, even if counsel raised other strong but unsuccessful claims. *Mapes, supra,* citing *Banks v. Reynolds*, 54 F. 3d 1508, 1515 n. 13 (10th Cir. 1995); see also *Page v. United States*, 884 F. 2d 300, 302 (7th Cir. 1989). Stated differently, failure to raise a significant and obvious claim can amount to reversible error. *Mapes v. Tate*, 388 F.3d 187, 192 (6th Cir. 2004).

Malone raised claims of ineffective assistance of appellate counsel in his Rule 26(B) application, which is the appropriate forum for raising those claims under Ohio law. In deciding that application, the Fourth District carefully recited the applicable standard of review provided in *Strickland* as applied to appellate counsel. *State v. Malone*, No. 14 CA 3648 (4th Dist. Nov. 29,

2016)(unreported; copy at State Court Record, ECF No. 9, PageID 287, *et seq*.)  The state court of appeals then recited the assignments of error Malone claimed had been omitted as a result of ineffective assistance of appellate counsel:

> In appellant's application to reopen appeal, he raises various proposed assignments of error that cover a wide range of topics. In his first proposed assignment of error, appellant asserts that his appellate counsel provided ineffective assistance because, inter alia, counsel (1) did not focus on the merits of the case, (2) did not keep appellant informed about important decisions, ( 3) was unwilling to raise various constitutional issues and address appellant's concerns, (4) was unwilling to request the correction of the transcript, and (5) did not prevent the jury from learning about various prior criminal convictions. In his second proposed assignment of error, appellant contends that the state "failed to introduce evidence on the independent mens rea element or produce any testimony that the appellant possessed knowledge of the forgery and the conviction is not supported by sufficient evidence." In this third proposed assignment of error, appellant again contends that the state "failed to introduce evidence on the independent mens rea element or produced any testimony that the appellant possessed knowledge or that he was deceptive when he uttered the writing" and that the conviction is against the manifest weight of the evidence. In this fourth assignment of error, appellant argues that the jury improperly received a file-stamped copy of "the wrong and unedited version of the proposed instructions" that the prosecution had submitted to the trial court. In his fifth proposed assignment of error, appellant asserts that plain error infected the proceedings because verdict forms were missing after the jury reached its verdict. In his sixth proposed assignment of error, appellant asserts that the "conglomeration of errors, when taken together, deprived appellant of a fair trial."

(ECF No. 9, PageID 296-97.)

The court of appeals then decided the Application as follows:

> After our review of appellant's application, appellant's supporting argument and the appellee's response to appellant's application, we do not believe that appellant has demonstrated that appellate counsel provided ineffective assistance during his participation in appellant's direct appeal.

In the case sub judice (1) the trial court properly instructed the jury on the applicable culpable mental states for the various criminal violations, and (2) the prosecution presented substantial competent, credible evidence that, if believed by the trier of fact, fully supported the jury's decision.

With respect to a claim that a conviction is against the manifest weight of the evidence, a reviewing court must review the record, weigh the evidence and all inferences, consider witness credibility and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created a manifest miscarriage of justice. *State v. Thompkins,* 78 Ohio St.3d 380, 1997-Ohio-52. The question is whether substantial evidence exists upon which the trier of fact could have reasonably concluded that all elements of the offenses have been proven beyond a reasonable doubt. *State v. Smith*, Pickaway App. No. 06CA7, 2007-Ohio-502. With respect to a claim that sufficient evidence does not support a conviction, a reviewing court must determine whether, after a review of the evidence admitted at trial, if believed and viewed in a light most favorable to the state, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Thompkins.*

After our review, we believe that during the jury trial the state adduced substantial competent, credible evidence that, if believed, established that appellant committed the crimes charged in the indictment. The fact that appellant can extract some bits of testimony and point to somewhat favorable evidence does not require the conclusion that the jury's verdict is against the manifest weight of the evidence, or is not supported by sufficient evidence. The fact that appellant disagrees with the jury's conclusion is understandable, but is of no consequence. Here, we again point out that the evidence fully supports the jury's verdicts.

Appellant also asserts that the jury received erroneous jury instructions.[2] However, our review of the trial transcript and the trial court's jury instructions included within the transcript reveals no improper comments or instructions. The trial court did not refer to appellant's prior criminal convictions.

---

[2] [footnote from Fourth District] It appears that appellant is citing the proposed instructions that the prosecution filed with the court that contained a reference to appellant's (1) choice about whether to testify, and (2) prior felony convictions. However, as the prosecution points out it does not appear that these topics were included in the trial court's actual jury instructions, and we see no evidence to indicate that the jury actually viewed the proposed instructions. The fact that certain documents appear in a court file does not mean that the trial court judge would have submitted those documents to the jury. A court may fashion its own jury instructions and give those instructions to the jury.

With respect to the missing jury verdict forms, it does appear that the jury did receive four guilty verdict forms and four not guilty verdict forms. However, when the jury reached its verdict, the jury returned only six forms. The trial court immediately addressed this issue and learned from the jury that they had mistakenly filled out the forms, then shredded the forms and placed them in the trash. The court thereupon instructed the court bailiff to locate the forms. The bailiff soon found the missing forms in the jury room's trash can, and then marked the forms as an exhibit. This activity, however, has no bearing whatsoever on the jury's verdict. In fact, we commend the trial court for its actions in this case to maintain an accurate record of the trial court proceedings.

Accordingly, based upon the foregoing reasons, we do not believe that any of the appellant's proposed assignments of error had a reasonable probability of success had appellant's counsel raised them in an appeal. Thus, we do not believe that appellant has demonstrated that his appellate counsel rendered ineffective assistance and we hereby deny his application to reopen his appeal.

*Id.* at PageID 296-300.

Thus, the Fourth District decided Malone's ineffective assistance of appellate counsel claims on their merits; it did not discern any procedural bar to that decision. When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 1005 (2011); *Brown v. Payton*, 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor*, 529 U.S. 362, 379 (2000). Deference is also due under 28 U.S.C. § 2254(d)(2) unless the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings. Because the Fourth District decided these claims on the merits, Malone's burden in habeas is to show that decision is an objectively unreasonable application of the relevant Supreme Court precedent.

In his Traverse, Malone recognizes that is the standard (ECF No. 13, PageID 782). Malones argues Ground Three from PageID 782 to PageID 796. Argument about the omitted assignments of error appears at various places and is considered here seriatim.

Regarding the claim that the jury saw erroneous instructions, Malone claims

> In the instant case it is a known fact that appellate counsel **knew** but **failed** to present arguments to the appellate court when he **was aware** that jurors received proposed jury instructions (which contained evidence of prior convictions), in the deliberation room, that were not meant for them to have. (ECF No. 9, Exhibit 3.) This alone had a "substantial and injurious effect or influence in determining the jury's verdict." *Davis v. Ayala,* 135 S. Ct. 2187 (quoting *O'Neal,* 513 U.S., at 435).

*Id.* at PageID 788 (emphasis in original). As proof of the factual assertions in this statement, Malone points to the State's Proposed Jury Instructions (State Court Record, ECF No. 9, Ex. 3).

Malone's evidence does not prove what he asserts. Because these proposed instructions had been filed with the Clerk of Courts, they were available to appellate counsel to see and also available to the court of appeals. But as Judge Abele wrote, that does not prove they ever reached the jury room. Appellate counsel could only argue assignments of error that were of record. Without proof that these proposed instructions ever reached the jury – proof Malone does not cite[3] – an assignment of error based on the speculation that they might have done so would have had no merit. It cannot be ineffective assistance of appellate counsel to fail to raise and assignment of error that could not have been won.

The only other omitted assignments of error that Malone argues in his Traverse are appellate counsel's failure to claim that the verdicts were based on insufficient evidence or were against the manifest weight of the evidence (ECF No. 13, PageID 792). The Fourth District

---

[3] Malone argues, again without providing any evidence, that his appellate counsel could have proved the proposed instructions reached the jury by interviewing the jurors (Traverse, ECF No. 13, PageID 788). But this is pure speculation without some actual evidence of what such interviews would have produced.

expressly addressed those claims. This is the same court that had the entire record before it on direct appeal and so had occasion to evaluate the evidence. Its decision to reject a claim of ineffective assistance of appellate counsel based on the sufficiency and weight of the evidence amounts to a holding that, if it had been presented with those claims, it would have rejected them. Had it done so and the claims then come to this Court in habeas, we would be compelled by precedent to give deference both to the jury's weighing of the evidence and that of the Fourth District on direct appeal. There is no doubt what the outcome would have been. Malone had motive, means, and opportunity to commit these crimes. His alternative story that someone else broke into the McKibbin home, stole the checks, and then made them payable to Malone and put them in the mailbox is patently absurd.

Malone does not address specifically any of the other omitted assignments of error, but contents himself with reciting generalities about constitutional rights (see Traverse, ECF No. 13, PageID 782-96). But his burden on Ground Three is to show that one or more of the omitted assignments , if argued, probably would have changed the outcome of the appeal. He has not done so. Ground Three should be dismissed on the merits.


**Ground Four: Sufficiency of the Evidence**


In his Fourth Ground for Relief, Malone argues his convictions are not supported by sufficient evidence. An allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia,* 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir.

1990)(*en banc*).  In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt.  *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . .  This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *United States v. Paige,* 470 F.3d 603, 608 (6th Cir. 2006).  This rule was recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991).  Of course, it is state law which determines the elements of offenses; but once the state has adopted the elements, it must then prove each of them beyond a reasonable doubt.  *In re Winship, supra.*

While Malone's Fourth Ground for Relief states a claim cognizable in habeas corpus, he procedurally defaulted on this claim when he failed to raise it on direct appeal.  Ineffective assistance of appellate counsel can excuse such a default, but that claim must itself be raised and litigated in the state courts before it can be used to excuse a default.  *Edwards v. Carpenter*, 529 U.S. 446, 451-53 (2000).  Malone did raise the omission of this claim as alleged ineffective assistance of appellate counsel, but, as held above with respect to Ground Three, the Fourth District's denial of that claim on the merits was not an objectively unreasonable application of *Strickland*.  Therefore, Ground Four should be dismissed.


**Ground Five:  Verdicts Against the Manifest Weight of the Evidence**


In his Fifth Ground for Relief, Malone asserts the jury verdicts are against the manifest weight of the evidence.  A manifest weight of the evidence claim is not a federal constitutional

claim.  *Johnson v. Havener*, 534 F.2d 1232, 1234 (6th Cir. 1986).  Because only federal constitutional claims are cognizable in habeas corpus, Malone's Ground Five should be dismissed.


**Ground Six:  Erroneous Jury Instructions**


In his Sixth Ground for Relief, Malone asserts he was denied a fair trial when erroneous jury instructions reached the jury.  The Traverse explains that the instructions referred to are the same Proposed Instructions filed by the State before trial.

This was a claim that could have been raised on direct appeal but was not.  To excuse that procedural default, Malone asserts the Fourth District, in denying his 26(B) Application, "lifted the procedural bar by addressing its merits."  (ECF No. 13, PageID 816.)  Not so.  The Fourth District plainly limited its analysis to the question whether appellate counsel was ineffective for failing to present this assignment of error.  Of course, in doing so it was obliged to discuss the potential merits of the claim.  As the general standard for ineffective assistance of appellate counsel claims recited above implies, the key question on the merits of an ineffective assistance of appellate counsel claim is how strong the omitted assignment of error would have been.  A court does not waive the default by discussing the prejudice prong of the *Strickland* standard.  "[B]ringing an ineffective assistance claim in state court based on counsel's failure to raise an underlying claim does not preserve the underlying claim for federal habeas review because 'the two claims are analytically distinct.'"  *Davie v. Mitchell*, 547 F.3d 297, 312 (6th Cir. 2008) quoting *White v Mitchell*, 431 F.3d 517, 526 (6th Cir. 2005); see also *Roberts v. Carter*, 337 F.3d 609, 615 (6th Cir. 2003)(noting that, "[i]n light of the requirements of Rule 26(B), the court's holding must be read as pertaining to the merits of" the ineffective assistance claim, not the underlying state rule claim).

Ground Six is procedurally defaulted by failure to raise this claim on direct appeal and the default is not excused by ineffective assistance of appellate counsel. Ground Six should therefore be dismissed.

**Ground Seven: Missing Verdict Forms**

In his Seventh Ground for Relief, Malone claims the missing not-guilty verdict forms violated his Sixth Amendment right to a fair trial. In the Traverse he restates this claim as being that the jury was never given not guilty forms, thus skewing the deliberations in the direction of guilty findings (ECF No. 13, PageID 828.)

Respondent asserts this claim is procedurally defaulted because it could have been but was not raised on direct appeal. Because it was not ineffective assistance of appellate counsel to fail to raise this claim on direct appeal, as held above on Ground Three, Malone cannot rely on ineffective assistance of appellate counsel to excuse the default.

In deciding the 26(B) Application, the Fourth District found as a matter of fact that the jury did receive the proper number (eight) of verdict forms. It held:

> With respect to the missing jury verdict forms, it does appear that the jury did receive four guilty verdict forms and four not guilty verdict forms. However, when the jury reached its verdict, the jury returned only six forms. The trial court immediately addressed this issue and learned from the jury that they had mistakenly filled out the forms, then shredded the forms and placed them in the trash. The court thereupon instructed the court bailiff to locate the forms. The bailiff soon found the missing forms in the jury room's trash can, and then marked the forms as an exhibit. This activity, however, has no bearing whatsoever on the jury's verdict. In fact, we commend the trial court for its actions in this case to maintain an accurate record of the trial court proceedings.

*State v. Malone*, No. 14 CA 3648 (4th Dist. Nov. 29, 2016)(unreported; copy at State Court Record,

ECF No. 9, PageID 299-300.)Malone disputes the accuracy of this finding, directing this Court's attention to the colloquy between the trial judge and the jury foreman in which the judge said he had sent eight verdict forms into deliberations and only six were handed back (Trial Transcript, State Court Record, ECF No. 9-2, PageID 655). The foreman insisted that the jury had received seven and had returned all but one. *Id.* At sidebar the judge insisted that he had stapled the verdict forms together himself, with a guilty and not guilty form for each count. *Id.* at PageID 656. Back in open court, the judge received the assurance of the jury that the absence of the one not guilty form did not affect their deliberations because they took a vote "before we opened up the forms." *Id.* at PageID 657-58. At the request of defense counsel, the jury was then polled and they individually and unanimously confirmed their guilty verdicts. *Id.* at PageID 661-62. Asked if there was anything else, defense counsel answered "not at this time Your Honor." *Id.* at PageID 663.

The court reconvened the next day, July 16, 2014, and stated the following for the record.

> Last night I started thinking and I called in this morning and asked my Bailiff to go up to the jury room and check the garbage can and see if the papers were up there that they started to write down wrong. He did find shredded verdict forms, documents, up there and he as [sic] placed those in a plastic bag which I am going to mark as Court Exhibit I which would be the majority of the things and in the second bag will be Court 16 Exhibit II. In looking at II bag there are six pieces of torn documents which were the verdict forms and on Court Exhibit II it's clear that they had both not guilty forms for the counts that they said that they didn't have, which 20 I believe is Count 1.
>
> I did not piece them together but I'm just making it a part of the record here today that Court of Appeals can look at and examine what we took out of the garbage can. My concern was they didn't have a not guilty form as to Count 1. I didn't know how that could happen and apparently, I didn't look at it real close but it looks like they were both together and they shredded them both up so I think they are torn in about the same pattern.
>
> Counsel is free to examine those if you want.

(Trial Tr., State Court Record, ECF No. 9-2, PageID 682-83.)  This statement of facts shows that the Fourth District was correct as to what happened.  Even if there had been a mistake of the type the jury foreman believed had occurred, it was entirely cured by the jury poll.  Thus, even if this Ground for Relief were not procedurally defaulted, it would be without merit because the evidence shows the mistake did not happen.

Ground Seven should be dismissed as procedurally defaulted and alternatively as without merit.


**Ground Eight:  Cumulative Error**


In his Eighth Ground for Relief, Malone asserts, "[t]his case reeks with multiple constitutional violations."  Respondent reads this as a claim for relief based on cumulative error and argues this is not a cognizable habeas claim (Return, ECF No. 10, PageID 725).  Petitioner confirms this reading in his Traverse (ECF No. 13, PageID 839).

Respondent argues that the United States Supreme Court has not recognized cumulative error as a basis for habeas corpus relief.  (Return, ECF No.  10, PageID 726, citing *Lorraine v. Coyle*, 291 F.3d 416 (6th Cir. 2002); *Sheppard v. Bagley*, 657 F.3d 338, 348 (6th Cir. 2011), *cert. denied*, 132 S.Ct. 2751 (2011) (citing *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005; *Hoffner v. Bradshaw*, 622 F.3d 487, 513 (6th Cir. 2010); *Moreland v. Bradshaw*, 699 F.3d 908, 931 (6th Cir. 2012; *Hazel v. Warden, Chillicothe Corr. Inst.*, No. 3:13cv332, 2014 WL 4076152, at *19 (S.D. Ohio Aug. 15, 2014) (Report and Recommendation), *adopted* (S.D. Ohio Sept. 24, 2014).

Malone cites no authority to the contrary.  In fact, in his Traverse he writes, "[t]his court have [sic] held that 'post-AEDPA, not even constitutional errors that would not individually

support habeas relief can be cumulated to support habeas relief.'" (ECF No. 13, PageID 840, citing *Scott v. Elo,* 302 F.3d 598, 607 (6th Cir. 2002). *Scott v. Elo* does in fact make that holding and it is dispositive of the Eighth Ground for Relief which should therefore be dismissed.

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Petition be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

April 3, 2019.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by mail. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party=s objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d

947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).